CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 09 2012

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES M. BATES, et al., ) | |
| ) | Civil Action No. 7:11CV00216 |
| Plaintiffs, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | |
| ) | By: Hon. Glen E. Conrad |
| STRAWBRIDGE STUDIOS, INC., et al., ) | Chief United States District Judge |
| ) | |
| Defendants. ) | |

Charles M. Bates and Donna L. Bates (collectively referred to as "the plaintiffs") filed this diversity action for defamation and breach of contract against Strawbridge Studios, Inc. ("Strawbridge") and John Doe, an unknown employee/agent of Strawbridge. The case is presently before the court on Strawbridge's motion for summary judgment. For the reasons that follow, the motion will be denied.

### Factual Background

The following facts are presented in the light most favorable to the plaintiffs. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that all evidence must be construed in the light most favorable to the party opposing summary judgment).

Strawbridge is a school photography business based in Durham, North Carolina. The company employs photographers who service clients in fourteen states and the District of Columbia. The clients' photographs are produced at the company's North Carolina plant.

The plaintiffs, who reside in Boones Mill, Virginia, also operate a school photography business. In January of 2008, they entered into a contract with Strawbridge, pursuant to which Strawbridge purchased the plaintiffs' school photography accounts and agreed to employ them to

handle accounts in Virginia and North Carolina. Unfortunately, the parties' relationship quickly soured and Strawbridge terminated the plaintiffs' employment.

In July of 2009, the plaintiffs filed an action for breach of contract against Strawbridge in state court. Strawbridge removed the action to this court on diversity grounds and filed counterclaims against the plaintiffs. See Sight and Sound Studios, Inc. v. Strawbridge Studios, Inc., No. 7:09CV00338 (W.D. Va. 2009). The parties ultimately negotiated a settlement agreement in May of 2010 that resolved their dispute. The settlement agreement included the following provision: "The parties agree that neither will say, write, publish, broadcast, or in any other way participate in negative or disparaging comments about the other."

Approximately six months later, in November of 2010, Trina LaPrade called Strawbridge's toll free number and spoke to a male customer service representative. LaPrade was attempting to locate the last school photograph that had been taken of her teenage daughter, who had been killed in a car accident. An employee at her daughter's school had mentioned that the photograph might have been taken by the plaintiffs. When LaPrade mentioned the plaintiffs' names, the customer service representative responded with derogatory comments about the couple. According to LaPrade, the representative stated that the plaintiffs were "not . . . reputable," that "they could not be trusted," and that "things got so bad [Strawbridge] had to get involved in a lawsuit." (LaPrade Decl. at ¶ 6.)

LaPrade subsequently visited her daughter's school. After relaying the comments made about the plaintiffs, LaPrade inquired as to "why the school would deal with people . . . who had such a bad reputation." (LaPrade Decl. at ¶ 9.)

2

On May 9, 2011, the plaintiffs filed this diversity action against Strawbridge and its unknown customer service representative, asserting claims of defamation and breach of contract. Thereafter, Strawbridge moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Procedure. On March 5, 2012, the court denied the motion to dismiss.

Upon the completion of discovery, Strawbridge filed a motion for summary judgment. The court held a hearing on the motion on May 4, 2012. The motion has been fully briefed and is ripe for review.

## Standard of Review

Under Rule 56, an award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

I. **Defamation**

Based on the statements allegedly made by the customer service representative,[1] the plaintiffs first assert a claim for defamation against Strawbridge. The plaintiffs allege that the representative was acting within the scope of his employment when the statements were made,

---

[1] As of this date, the plaintiffs have been unable to confirm the identity of this individual.

and that the statements were harmful to their business reputation. In moving for summary judgment on the merits of this claim, Strawbridge makes four arguments: (1) that the plaintiffs have failed to prove that the statements were made in the first instance; (2) that the plaintiffs have failed to produce evidence establishing that the statements are false; (3) that the statements are expressions of opinion; and (4) that they are protected by a qualified privilege. For the following reasons, the court disagrees with Strawbridge on all four fronts and concludes that the claim must be decided by a jury.

To establish a claim for defamation under Virginia law, the plaintiffs must first show that the defendant published a false factual statement that concerns and harms the plaintiffs or the plaintiffs' reputation. Hyland v. Raytheon Tech. Servs. Co., 670 S.E.2d 746, 750 (Va. 2009). The plaintiffs must also show "that the defendant knew that the statement was false or, believing that the statement was true, lacked a reasonable basis for such belief, or acted negligently in failing to determine the facts on which the publication was based." Id. Defamatory words are actionable per se if they prejudice a person in his or her trade or profession. Fuste v. Riverside Healthcare Ass'n, Inc., 575 S.E.2d 858, 861 (Va. 2003). "Defamatory statements may include statements made by inference, implication, or insinuation." Hyland, 670 S.E.2d at 750; see also Sewell v. Wells Fargo Bank, N.A., Case No. 7:11CV00124, 2012 U.S. Dist. LEXIS 9376, at *17 (W.D. Va. Jan. 27, 2012) ("A defamatory statement need not be made in direct terms if, when considering the statement 'as a whole, including any implications, inferences, or insinuations that reasonably could be drawn from the statement,' it carries a defamatory message.") (quoting Hyland, 670 S.E.2d at 751).

4

### A. Evidence of the Alleged Statements

In moving for summary judgment on the merits of the plaintiffs' defamation claim, Strawbridge first argues that the plaintiffs have failed to proffer sufficient evidence to establish that the allegedly defamatory statements were made as pled in their complaint. Citing the Virginia Supreme Court's decision in Fed. Land Bank of Baltimore v. Birchfield, 3 S.E.2d 405 (Va. 1939), Strawbridge emphasizes that a "sufficient number" of the defamatory words must be "substantially proven as alleged." Birchfield, 3 S.E.2d at 410.

In their complaint, the plaintiffs specifically alleged that the customer service representative told LaPrade that the plaintiffs "'were not reputable and could not be trusted, and things got so bad [Strawbridge] had to get involved in a lawsuit.'" (Compl. at ¶ 7.) In response to Strawbridge's motion for summary judgment, the plaintiffs have submitted a declaration from LaPrade that describes the statements made by the customer service representatives. LaPrade's description mirrors the allegations in the plaintiffs' complaint. According to the declaration, the representative stated that the plaintiffs were "not reputable," that "they could not be trusted," and that "things got so bad [Strawbridge] had to get involved in a lawsuit." (LaPrade Decl. at ¶ 6.) While Strawbridge takes issue with the fact that the declaration, itself, lacks quotation marks around the alleged statements, the court is convinced that the plaintiffs' evidence is sufficient to satisfy the standard set forth in Birchfield.

### B. Truth or Falsity

Strawbridge next argues that the plaintiffs have failed to proffer evidence which would tend to prove the falsity of the statements in question. Citing the deposition testimony of its president, Kenneth Strawbridge, and declarations from various third parties, Strawbridge

5

maintains that the plaintiffs "were not trustworthy in making payments on their legal obligations," and that the couple "did not enjoy a good reputation in the business community." (Br. in Supp. of Summ. J. at 8.) In response, the plaintiffs have proffered declarations from individuals who have had positive experiences working with them, and who are willing to attest to the plaintiffs' trustworthiness and reputation in the business community.

Under Virginia law, the issue of "whether a plaintiff has sufficiently proven the falsity of the alleged defamatory statements is a jury question." Jordan v. Kollman, 612 S.E.2d 203, 207 (Va. 2005). Viewing the evidence in the light most favorable to the plaintiffs, the court concludes that reasonable minds could differ as to whether the statements allegedly made about the plaintiffs were true or false. Accordingly, the court is convinced that the issue of falsity must be decided by the jury.[2]

### C. Fact or Opinion

For its third argument, Strawbridge contends, as it did in its Rule 12(b)(6) motion, that the alleged statements are expressions of opinion rather than statements of fact. See WJLA-TV v. Levin, 564 S.E.2d 383, 392 (Va. 2002) ("Pure expressions of opinion," which do not contain provably false factual connotations, "cannot normally form the basis of an action for defamation."). This issue, unlike that of falsity, presents a legal question to be decided by the court. Hyland, 670 S.E.2d at 751. "In determining whether a statement is fact or opinion, a court may not isolate one portion of the statement at issue from another portion of the statement." Id. Instead, the court must consider the statement as a whole." Id.

---

[2] To the extent Strawbridge challenges the admissibility of the plaintiffs' evidence on the issue of falsity, the court is constrained to conclude that such evidentiary issues are better suited for determination at trial.

6

Applying these principles, the court is unable to conclude, as a matter of law, that the statements at issue are pure expressions of opinion that cannot form the basis of an actionable claim for defamation. Given the context in which the statements were made, and the fact that the customer service representative added that "things got so bad [Strawbridge] had to get involved in a lawsuit," the court remains convinced that the alleged statements could be reasonably understood to imply the existence of defamatory facts. Because "[s]tatements clearly implying the existence of facts are actionable as defamation," Swengler v. ITT Corp., 993 F.2d 1063, 1071 (4th Cir. 1993), the court is unable to conclude that Strawbridge is entitled to summary judgment on this ground. See also PBM Prods., LLC v. Mead Johnson Nutrition Co., 678 F. Supp. 2d 390, 401 (E.D. Va. 2009) (noting that an opinion may constitute actionable defamation if it can be reasonably interpreted to declare or imply untrue facts).

### D.   Qualified Privilege

For its final argument with respect to the merits of the defamation claim, Strawbridge asserts that the claim is subject to a qualified privilege. Under this common law defense, "a communication, made in good faith, on a subject matter in which the person communicating has an interest, or owes a duty, legal, moral, or social, is qualifiedly privileged if made to a person having a corresponding interest or duty." Great Coastal Express, Inc. v. Ellington, 334 S.E.2d 846, 853 (Va. 1985). While the privilege is often discussed in connection with statements related to employment matters, it has also been applied in other circumstances in which both parties to a communication had an interest in the subject matter. See, e.g., Echtenkamp v. Loudon County Pub. Schs., 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003) (explaining that "the privilege applies

broadly to all statements related to 'employment matters,' provided the parties to the communication have a duty or interest in the subject matter"); Greene v. Zucker, Case No. 97-2406, 1998 U.S. App. LEXIS 22102, at *4 (4th Cir. Sept. 9, 1998) (holding that an individual's communication to the Secretary of the Navy was protected by a qualified privilege, where the communication described inappropriate behavior by a Navy officer up for promotion); Andrews v. Va. Union Univ., Case No. 3:07cv447, 2008 U.S. Dist. LEXIS 40001, at *33 (E.D. Va. May 15, 2008) (noting that the chairwoman of a university department had an interest in the subject matter of her allegedly defamatory statement, and that "all of the parties who were privy to the comments," including students, administrators, and parents, also "had an interest in the subject matter"). A showing of malice is necessary to overcome the qualified privilege. Larimore v. Blaylock, 528 S.E.2d 119, 121 (Va. 2000).

Having reviewed the evidence in the instant case, the court is unable to conclude that the statements allegedly made by the customer service representative are protected by the qualified privilege. For the privilege to apply, Strawbridge must show that both its representative and LaPrade had corresponding duties or interests in the subject matter. See Suarez v. Loomis Armored US, LLC, Case No. 3:10BCVB690, 2010 U.S. Dist. LEXIS 129335, at *8-9 (E.D. Va. Dec. 7, 2010) (holding that the defendant failed to show that the qualified privilege protected a statement made to a Walgreens employee regarding the termination of one of the defendant's armored truck drivers, where there was no indication that the subject matter related to the duties of the Walgreens employee). While Strawbridge maintains that its representatives have a legitimate interest in properly servicing a potential customer, Strawbridge has failed to establish

8

that LaPrade had any corresponding interest in learning about Strawbridge's failed business relationship with the plaintiffs. Indeed, as LaPrade emphasizes in her declaration:

> I did not understand why this customer service representative was saying these things to me, when I was simply trying to obtain a photo of my daughter, and all I needed him to tell me was yes, they [Strawbridge] could get me the photo, or no, they could not get me the photo. I had no interest in hearing these backbiting comments.

(LaPrade Decl. at ¶ 7.) For these reasons, based on the current record, the court is unable to conclude, as a matter of law, that the statements at issue are protected by the qualified privilege. Accordingly, Strawbridge is not entitled to summary judgment on the merits of the plaintiffs' defamation claim.[3]

## II.   **Breach of Contract**

Strawbridge has also moved for summary judgment on the plaintiffs' claim for breach of contract. To support this claim, the plaintiffs allege that the statements made by Strawbridge's customer service representative were in direct violation of the 2010 settlement agreement, pursuant to which the plaintiffs and Strawbridge expressly agreed to refrain from saying anything negative or disparaging about the other.

---

[3] Strawbridge has also moved for summary judgment on the plaintiffs' request for punitive damages associated with their defamation claim. Although Strawbridge recognizes that a corporation may be liable for compensatory damages for defamatory statements made by an agent in the course and scope of the agent's employment, Strawbridge emphasizes that a corporation cannot be liable for punitive damages unless it authorized or subsequently ratified the agent's conduct. See Oberbroeckling v. Lyle, 362 S.E.2d 682, 687 (Va. 1987). Additionally, Strawbridge emphasizes that the recovery of punitive damages in a defamation case requires the plaintiffs to prove actual malice by clear and convincing evidence. Gov't Micro Res., Inc. v. Jackson, 624 S.E.2d 63, 70 (Va. 2006).

As the court noted during the hearing on Strawbridge's motion, and, based on the factual circumstances identified by the plaintiffs at the time of oral argument, the court does not believe that the plaintiffs have forecast sufficient evidence to warrant the submission of a punitive damages question to the jury. Thus, based on the current record, the court is of the opinion that the punitive damages claim cannot go forward.

Under Virginia law, the essential elements of a cause of action for breach of contract are (1) a legal obligation of the defendant to the plaintiffs; (2) a violation or breach of that obligation; and (3) consequential injury or damage to the plaintiffs. Hamlet v. Hayes, 641 S.E.2d 115, 117 (Va. 2007). Proof of damage is an "essential element" of a claim for breach of contract, and "failure to prove that element warrants dismissal of the claim." Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 136 (Va. 2009) (internal citation and quotation marks omitted). In addition, the plaintiffs have "the burden of proving with reasonable certainty the amount of damages and the cause from which they resulted; speculation and conjecture cannot form the basis of the recovery." Id. "As a general rule, damages for breach of contracts are limited to the pecuniary loss sustained." Id.

In moving for summary judgment with respect to the plaintiffs' breach of contract claim, Strawbridge challenges the sufficiency of the evidence with respect to the element of consequential injury or damage. Although the plaintiffs maintain that the alleged breach has resulted in lost business opportunities, Strawbridge contends that the evidence proffered by the plaintiffs demonstrates that such losses are purely speculative and cannot be established with reasonable certainty. (Br. in Supp. of Mot. for Summ. J. at 23.)

Viewing the evidence in the light most favorable to the plaintiffs, however, the court is unable to conclude that Strawbridge is entitled to summary judgment on this ground. As the court noted during the hearing on the instant motion, the plaintiffs may be entitled to an award of nominal damages in the event that they are unable to establish actual compensatory damages with reasonable certainty. See Crist v. Metro. Mortg. Fund, Inc., 343 S.E.2d 308, 311 (Va. 1986) (affirming the award of nominal damages in a breach of contract action where compensatory

damages were not established with reasonable certainty). Courts have recognized that nominal damages, in appropriate circumstances, can be sufficient to satisfy the damage element of a prima facie case for breach of contract under Virginia law. See Minnesota Lawyers Mut. Ins. Co. v. Batzli, 442 F. App'x 40, 51-53 (4th Cir. 2011) (holding that nominal damages were sufficient to satisfy the damage element where the plaintiff suffered an actual loss or injury but was unable to prove the amount of damages); Western Insulation, LP v. Moore, 316 F. App'x 291, 297-299 (4th Cir. 2009) (holding that the plaintiff's failure to prove compensatory damages did not preclude the plaintiff from establishing all of the necessary elements for a breach of contract claim under Virginia law).

While the evidence may ultimately establish that the plaintiffs suffered no consequential injury or damage of any kind and, thus, that they are not entitled to prevail on their breach of contract claim, the court is convinced that the record is sufficient to permit this claim to proceed to trial. Accordingly, the defendants' motion for summary judgment will also be denied with respect to the plaintiffs' claim for breach of contract.

## Conclusion

For the reasons stated, Strawbridge's motion for summary judgment on the merits of the plaintiffs' claims will be denied. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 9th day of May, 2012.

_____
Chief United States District Judge